FAYER GIPSON LLP
GREGORY A. FAYER (State Bar. No. 232303)
GFayer@fayergipson.com
MINH Z. KUO (State Bar No. 247489)
MKuo@fayergipson.com
2029 Century Park East, Suite 3535
Los Angeles, California 90067
Telephone: 310.557.3558
Facsimile:  310.557.3589

Attorneys for Plaintiff
Equity Pictures Medienfonds GmbH Co. KG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| EQUITY PICTURES MEDIENFONDS GMBH & CO. KG, a German limited partnership,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MYRIAD PICTURES, INC., a California corporation; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | CASE NO. 2:14-CV-06489<br><br>**COMPLAINT FOR BREACH OF A WRITTEN CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

# COMPLAINT

Plaintiff Equity Pictures Medienfonds GmbH & Co. KG ("Equity" or "Plaintiff") alleges, on information and belief, as follows:

## NATURE OF THE ACTION

1. This case arises out of defendant Myriad Pictures, Inc.'s ("Myriad" or "Defendant") breaches of its obligations under a series of written contracts relating to the feature-length motion picture *Eulogy*, directed by Michael Clancy and starring Zooey Deschanel, Kelly Preston and Ray Romano (the "Picture"). In or about December 2002, the Equity film fund entered into agreements with Eulogy Distribution, LLC ("EDL"), a single-purpose entity created by Myriad, for the financing and distribution of the Picture. These agreements included a distribution agreement dated December 23, 2002 ("Distribution Agreement"), which provided that in exchange for Equity putting up 100% of the financing to make the film, EDL would, *inter alia*, pay Equity a minimum guarantee payment of 80% of the budget no later than six months after delivery of the Picture, or June 24, 2004. Of this minimum guarantee payment, an amount equal to twenty percent (20%) of the budget, or $1,304,612.00, was secured by a corporate guarantee from Myriad itself (the "Guarantee"). By the time the Guarantee came due, Equity had received no proceeds from the Picture, and Myriad failed and refused to pay the Guarantee.

2. Accordingly, in mid-2005 Equity brought claims against Myriad for breach of the Guarantee agreement in the Superior Court for the County of Los Angeles. Equity simultaneously brought claims against EDL for EDL's breach of the Guarantee agreement in arbitration before the IFTA, as required by the terms of the Distribution Agreement. Equity obtained an arbitration award against Myriad in the amount of $1,304,612.00, which was confirmed by the Los Angeles Superior Court on September 25, 2006.

3. Subsequently, on June 6, 2007, Myriad and Equity entered into a settlement agreement ("Settlement Agreement") pursuant to which Myriad agreed to

pay Equity the sum of $672,143.66 (the "Settlement Sum") no later than December 31, 2008.  Once again, however, Myriad refused to honor its payment obligations and failed to timely make the settlement payment.

4. In an effort to resolve the matter amicably, Equity agreed to enter into a series of amendments to the Settlement Agreement, providing for various extended payment schedules, at Myriad's request.  Myriad, however, once again failed and refused to comply with its payment obligations under the Settlement Agreement (as amended).  Indeed, Myriad failed to make any timely payments whatsoever.

5. To date, Myriad has paid (untimely) a total of only $132,009.34 towards the Settlement Sum.  The latest payment to Equity was a $20,000 payment made in May 2013, nearly six (6) months after the full Settlement Sum was due under the most recent amendment to the Settlement Agreement.

6. Accordingly, Equity was forced to bring this action for breach of Myriad's obligations under the Settlement Agreement.  Myriad currently owes Equity principal in the amount of $540,133.66, plus interest accruing at a rate of ten percent (10%) per annum from the date of Myriad's breach.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and 1367.  As stated in paragraphs 10 and 11 below, for purposes of diversity jurisdiction, plaintiff Equity is a citizen of the Republic of Germany and the Republic of Austria, and defendant Eulogy is a citizen of the State of California.  The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendants because Defendants are citizens of the State of California and conduct business in this District, including the primary conduct that forms the basis of the allegations herein.

9. Venue is proper in the Central District of California pursuant to 28

U.S.C. § 1391(a)(1), (2), and (3).

## THE PARTIES

10. Plaintiff Equity Pictures Medienfonds GmbH & Co. KG is a limited partnership organized and existing under the laws of the Republic of Germany, with its principal place of business at Bavariafilmplatz 7, 82031 Gruenwald, Germany. Equity is engaged in the business of film financing and production. Equity, along with its sister funds, has financed and produced 28 feature-length Hollywood films. As relevant here, Equity produced and financed a feature-length film, entitled *Eulogy*. Equity is informed and believes that Equity and all of its partners or members, and any and all of the partners or members of any and all partners or members thereof, reside in and are citizens of the Republic of Germany and/or the Republic of Austria.

11. Defendant Myriad Pictures, Inc. is a California corporation whose principal place of business is in Santa Monica, California. Equity is informed and believes that Myriad is the parent corporation of several single-purpose entities that were created for the financing, production, distribution and sale of *Eulogy*, including Eulogy Distribution, LLC.

12. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as DOES 1-10, inclusive, are unknown at the present time and Plaintiff therefore sues said DOES and each of them by such fictitious names. If necessary, Plaintiff will seek leave of court to amend this complaint to allege their true names and capacities when they are ascertained.

13. Unless otherwise indicated herein, on information and belief, each of DOES 1-10, inclusive, participated in the activities described herein and rendered material assistance to the other Defendants in the actions alleged herein, conspired and agreed with and aided and abetted one or more of the other Defendants and at all relevant times each of the Defendants was the principal or agent, partner, independent contractor, loan-out company, servant and/or employee of at least one other of the

other Defendants and all of the acts performed by them or omissions alleged herein were made in the course and scope of their employment, agency, partnership or other such relationship and with knowledge, consent, approval and/or ratification of the principals and each of them.  Unless otherwise indicated herein, each of the parties herein named as DOES 1-10 is responsible in some manner or fashion and is liable and responsible on the facts alleged herein for all the relief sought.

## GENERAL ALLEGATIONS

14.   Myriad was, on information and belief, founded in 1999 by its President and CEO, Kirk D'Amico, as an independent entertainment company specializing in the production, distribution, and sale of feature films and television programming.

15.   In or around December of 2002, Equity entered into a series of agreements, including the Distribution Agreement, with several single-purpose entities that were wholly owned by Myriad, regarding the financing, production, distribution, and sale of the motion picture entitled *Eulogy*.  Pursuant to these agreements, Equity agreed to provide 100% of the $6,523,060 production budget for the film in exchange for, *inter alia*, a contractual guarantee from EDL that Equity would receive back at least eighty percent (80%) of the budget within six months after delivery of the completed Picture.  Sixty percent (60%) of the budget, or $3,913,836, was to be secured by a letter of credit or bank loan from Comerica Bank, while the remaining twenty percent (20%), or $1,304,612.00, was secured by a corporate guarantee from Myriad itself, as opposed to EDL (the "Guarantee").

16.   The Picture was delivered on December 24, 2003, and the deadline for payment of the Guarantee passed on June 24, 2004.  There were no extensions of the deadline.

17.   By mid-2005, Equity had received no proceeds from the Picture, and Myriad had failed to make any payments whatsoever on the Guarantee.  As a result, Equity filed a lawsuit in Los Angeles Superior Court, *Equity Pictures Medienfonds*

*GmbH & Co. KG v. Myriad Pictures, Inc.*, Case No. BC336845, alleging claims for breach of contract against Myriad and seeking damages of $1,304,612.00, the amount of the Guarantee.

18. On July 20, 2005, then-counsel for Equity sent a demand letter to EDL, bringing claims against EDL for EDL's own breach of the Guarantee before the Independent Film & Television Alliance ("IFTA") pursuant to Paragraph 18 of the distribution agreement for the Picture. That case proceeded to arbitration, and resulted in an award of $1,304,612.00 against EDL and in favor of Equity. The arbitration award was confirmed by the Los Angeles Superior Court on September 25, 2006.

19. On June 6, 2007, the parties entered into a Settlement Agreement under which Myriad agreed to pay Equity the Settlement Sum of $672,143.66 no later than December 31, 2008 in exchange for the settlement of Equity's breach of contract claims against Myriad. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference.

20. Following the execution of the Settlement Agreement, Equity filed a notice of settlement of the entire case on April 11, 2007, and the case was dismissed on June 11, 2007.

21. By the time the Settlement Sum was due to be paid in full on December 31, 2008, Myriad had made only a single payment of $12,009.34. The Settlement Agreement was amended on May 19, 2009 ("Amendment No. 1") to make the Settlement Sum payable in installments as follows: $107,990.66 payable within 30 days of the execution of Amendment No. 1, or June 19, 2009; $120,000 payable on March 31, 2010; $120,000 payable on March 31, 2011; $120,000 payable on March 31, 2012; and $192,143 payable on December 31, 2012. A true and correct copy of Amendment No. 1 is attached hereto as **Exhibit B** and is incorporated herein by reference.

22. Despite the amended schedule, Myriad failed to make any additional payments whatsoever by early 2010. Equity agreed to amend the Settlement

Agreement again to provide further flexibility to Myriad and to prevent Myriad from falling into breach of the Settlement Agreement.

23. On February 11, 2010, the parties executed a second amendment ("Amendment No. 2") to further postpone the installment payments at Myriad's request. Under Amendment No. 2, Myriad would make quarterly installment payments of between $30,000 and $40,000 beginning on March 31, 2010 until a final payment of $240,133.66 on December 31, 2012. A true and correct copy of Amendment No. 2 is attached hereto as **Exhibit C** and is incorporated herein by reference.

24. Equity entered into the above-referenced amendments in a good faith attempt to reduce the financial burden of the Settlement Sum on Myriad, and to allow Myriad greater financial flexibility in paying off the Settlement Sum.

25. Despite these repeated breaches, delays and amendments, Myriad has consistently failed to make payments by the dates required by the Settlement Agreement and its amendments. When Myriad did make payments of the Settlement Sum, they were untimely and incomplete. Despite being required to begin making payments on March 31, 2010 pursuant to Amendment No. 2, Myriad's first payment was not made until May 17, 2010. To date, Myriad has only paid a fraction of the Settlement Sum to Equity. Myriad's payments pursuant to the Settlement Agreement and its amendments totaled $132,009.34, leaving $540,133.66 outstanding on the Settlement Sum. Myriad's last payment to Equity was a $20,000 payment made on May 23, 2013, nearly six months after the Settlement Sum was due to be paid in full.

26. On June 17, 2014, Equity wrote to Myriad to notify Myriad of its material breaches of the Settlement Agreement, and demanded payment of the remainder of the Settlement Sum within thirty (30) days pursuant to the provisions of Amendment No. 2. Myriad failed to make any payments in response to Equity's June 17, 2014 letter, and instead requested a further unspecified extension of the payment schedule.

27. In light of the foregoing, Equity is entitled to recover the $540,133.66 outstanding on the Settlement Sum.

## FIRST CLAIM FOR RELIEF
## (Breach of a Written Contract)

28. Plaintiff repeats and realleges the allegations made in paragraphs 1 through 27 as if fully set forth herein.

29. The Settlement Agreement, together with the amendments thereto, constitute a written contract by which Myriad, in exchange for Equity's agreement to settle its claims against Myriad and forsake its right to enforce the $1,304,612 arbitration award against Myriad, agreed to pay the Settlement Sum of $672,143.66 to Equity in installments, with the final installment due on December 31, 2012.

30. Myriad has materially breached its obligations under the Settlement Agreement and its amendments by failing to make timely payments as set forth in the Settlement Agreement and its amendments, by failing and refusing to pay Equity the full balance of the Settlement Sum by December 31, 2012, and by failing to cure its breach within thirty (30) business days of the written notice sent by Equity on June 17, 2014.

31. Plaintiff has fully and completely performed all conditions, covenants and obligations required of it under the Settlement Agreement and amendments thereto.

32. As a direct, proximate, and foreseeable result of the conduct and omissions alleged above, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $540,133.66, the amount outstanding on the Settlement Sum, plus interest thereon from the date of Myriad's breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A. For an award of direct and consequential damages in an amount to be ascertained at trial but in no event less than $540,133.66, plus interest thereon at the legal rate of ten percent (10%) per annum from the date of Myriad's breach;

B. For prejudgment interest thereon;

C. For Plaintiff's costs of suit;

D. For reasonable attorneys' fees; and

E. For such other and further relief as the Court may deem just and proper.

DATED: August 18, 2014    FAYER GIPSON LLP
GREGORY A. FAYER
MINH Z. KUO

By /S/Gregory A. Fayer_____
GREGORY A. FAYER
Attorneys for Plaintiff Equity Pictures Medienfonds GmbH & Co. KG

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

DATED: August 18, 2014

FAYER GIPSON LLP
GREGORY A. FAYER
MINH Z. KUO

By /S/Gregory A. Fayer
GREGORY A. FAYER
Attorneys for Plaintiff Equity Pictures Medienfonds GmbH & Co. KG